AO (Rev. 5/85) Criminal Complaint

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION



Filed 4/3/12

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| vs. | |
| FABIAN ORTIZ | CASE NUMBER: 6:12-mj-1163 |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about April 2, 2012, in Osceola County, in the Middle District of Florida, defendant did knowingly and intentionally possess counterfeit obligations in violation of Title 18, United States Code, Section 472. I further state that I am a Special Agent with the United States Secret Service, and that this Complaint is based on the following facts:

SEE ATTACHED MASTER AFFIDAVIT

Continued on the attached sheet and made a part hereof:  ☒ Yes   ☐ No

_____
Signature of Complainant
Jeffrey S. Seeger

Sworn to before me and subscribed in my presence,

April 3, 2012                                     at         Orlando, Florida

KARLA R. SPAULDING
United States Magistrate Judge                               _____
Name & Title of Judicial Officer                              Signature of Judicial Officer

**STATE OF FLORIDA**          6:12-mj-1163 & 1164

**COUNTY OF ORANGE**

## MASTER AFFIDAVIT

I, Jeffrey S. Seeger, being duly sworn, do hereby depose and state that:

1. I am a Special Agent (SA) with the United States Secret Service (USSS) and have been so employed since June 2005. Prior to serving as a USSS SA, I served three years as a Federal Air Marshal with the Federal Air Marshal Service. Prior to that, I served as a Lieutenant and Officer with the Federal Bureau of Prisons for eight years. Routine duties of my employment include the investigation of violations of federal laws pertaining to fraud and counterfeiting of United States and Foreign Obligations and Securities.

2. In conjunction with my official duties, I have conducted a counterfeit currency investigation of **Fabian Ortiz**. The facts contained in this affidavit are based on my own personal knowledge, as well as information provided to me by civilians and other law enforcement officers. Because this affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint against **Fabian Ortiz** and a search warrant for **670 East Vine Street, Room 222, Kissimmee, Florida**, it does not contain each and every fact known or learned during the course of the investigation.

1

3. On or about February 16, 2012, a Cooperating Source (CS) met with "G.J." to discuss the sale of counterfeit United States currency.[1] During the meeting, "G.J." provided the CS with one counterfeit $100 Federal Reserve Note (FRN) as a sample of what "G.J." said he was ready to sell.

4. On March 28, 2012, **Fabian Ortiz** and "E.R." came to 3008 Lion's Court, Kissimmee, Florida in a 2012 black Mazda 3, Florida tag #482XRU, and met with USSS Undercover Task Force Agent Noel Martinez. **Fabian Ortiz** and "E.R." then sold 50 counterfeit $100 FRNs for $1,500.00 in genuine United States currency. **Fabian Ortiz** handed TFA Martinez a white envelope which contained 50 counterfeit $100 FRNs and TFA Martinez handed **Fabian Ortiz** $1,500.00 in genuine United States currency.

5. Immediately after the undercover purchase of counterfeit United States currency, USSS SA Michael Plitt and I met with TFA Martinez at a different location. I took possession of the suspected counterfeit currency. Next, I inspected and verified that the bills were in fact counterfeit, based on it lacking genuine security features such as lack of genuine security thread, lack of genuine watermark, lack of genuine intaglio printing, and lack of genuine optical variable ink.

---

[1] The CS has shown to be a reliable source of information. The CS has felony convictions for extortion, trafficking in cocaine, passport fraud and delivery of marijuana, and is currently cooperating with law enforcement officers with the hope of obtaining reduced sentence. The information provided by the CS was corroborated through different means of intelligence gathering throughout the investigation to include surveillance, recorded undercover meetings, and confidential source debriefings.

6.    Later that same day, USSS agents conducted surveillance on **Fabian Ortiz** and "E.R." after they were stopped by Florida Highway Patrol (FHP) at 1001 South Semoran Boulevard, Orlando, Florida for changing lanes without signaling. During the traffic stop, FHP Trooper Michael Eyes asked **Fabian Ortiz** for verbal consent to search the vehicle. **Fabian Ortiz** gave Trooper Eyes consent to search the vehicle. During the subsequent search of the vehicle, Trooper Eyes found a screwdriver near the driver's door. Trooper Eyes also saw tool marks on the dashboard, behind the steering wheel. Trooper Eyes used the screwdriver on the spot where he saw the tool marks and pried off the cover of the dashboard. Concealed beneath the dashboard was a white envelope that contained $29,300.00 in counterfeit $100 FRN's.

7.    Shortly after the traffic stop concluded, I was contacted by the CS. According to the CS, "G.J." called him after he heard about the traffic stop and said that **Fabian Ortiz** hid more counterfeit under the hood, behind the battery. Trooper Eyes contacted the tow truck driver and asked him to look under the hood. The tow truck driver noticed a white package behind the battery compartment. I then drove to the impound lot and searched under the hood and found a white envelope that contained an additional $21,000.00 in counterfeit $100 FRNs

8.    On March 29, 2012, Trooper Eyes contacted me to inform me that, while **Fabian Ortiz** and "E.R." were sitting in the Florida Highway Patrol vehicle during the traffic stop, he activated a recording device in his vehicle. As a result,

3

the conversation between Fabian Ortiz and "E.R." was recorded. Trooper Eyes stated that, in their conversation, **Fabian Ortiz** and "E.R." talked about how they hoped the officers did not find the hidden counterfeit currency.

9. On March 30, 2012, the CS recorded a conversation with **Fabian Ortiz** and others. During the conversation, the CS told **Fabian Ortiz** that TFA Martinez expressed an interest in purchasing additional counterfeit currency the following week. During that conversation, **Fabian Ortiz** stated he would flee the country after **Fabian Ortiz's** father went to state court to get his (**Ortiz's** father) GPS monitor removed.

10. On April 2, 2012, the CS spoke with **Fabian Ortiz** about TFA Martinez purchasing $100,000 of counterfeit currency in exchange for $30,000 genuine currency. The CS and **Fabian Ortiz** agreed to sell TFA Martinez the counterfeit currency on April 3, 2012.

11. During the evening of April 2, 2012, the CS contacted me and told me that he/she had taken **Fabian Ortiz** to a storage unit where **Fabian Ortiz** retrieved two suitcases, each of which contained counterfeit FRNs. After going to the storage unit, the CS then took **Fabian Ortiz** to Room 222 at the Apollo Inn, located at 670 East Vine Street, Kissimmee, Florida, where **Fabian Ortiz** was staying that evening.[2]

12. On April 3, 2012, the CS went to the Apollo Inn and met with **Fabian Ortiz** in Room 222. During their meeting, **Fabian Ortiz** told the CS that

---

[2] I subsequently learned from the CS that Room 222 was registered under the fictitious name to "Felipe Gomez Hu" for the evening of April 2, 2012.

4

he wanted the CS to sell the counterfeit currency to TFA Martinez. **Fabian Ortiz** told the CS that he (**Ortiz**) would go to the storage unit to place the blue suitcase containing excess counterfeit currency in storage and would leave the purple suitcase containing counterfeit currency with the CS in Room 222. **Fabian Ortiz** told the CS that he (**Ortiz**) would then come back to Room 222 to pick up the suitcase. While inside Room 222, **Fabian Ortiz** told the CS that there was counterfeit currency in the purple suitcase. Additionally, **Fabian Ortiz** showed the CS the counterfeit currency in the blue and purple suitcases.

13.     On April 3, 2012, at approximately noon, **Fabian Ortiz** left Room 222 with a blue suitcase to go to a storage unit located at 608 East Vine Street, Kissimmee, Florida. At approximately 12:10 p.m., **Fabian Ortiz** was arrested by law enforcement at the storage unit and in possession of the blue suitcase.

14.     During a subsequent search of the blue suitcase, law enforcement recovered approximately $127,000.00 of counterfeit United States currency.

15.     Following the arrest of **Fabian Ortiz**, the CS told me that he was still in Room 222 and that the purple suitcase was with him/her. Law enforcement has since secured Room 222 in anticipation of obtaining a search warrant for Room 222 and the purple suitcase.

16.     On the basis of the foregoing facts and evidence, I submit that probable cause exists to charge **Fabian Ortiz** with violating Title 18, United States Code, Section 472 (Possession of Counterfeit United States Currency). Furthermore, I submit that probable cause exists to search **670 East Vine Street,**

5

**Room 222, Kissimmee, Florida**, more particularly described in Attachment A, for the items detailed in Attachment B, as evidence of violations of Title 18, United States Code, Section 472 (Possession of Counterfeit United States Currency) and Title 18, United States Code, Section 473 (Dealing in Counterfeit United States Currency).

This concludes my affidavit.

JEFFREY S. SEEGER
Special Agent
United States Secret Service

Subscribed and sworn before me this
30 day of April, 2012

The Honorable Karla R. Spaulding
UNITED STATES MAGISTRATE JUDGE

6

## **Attachment A**

670 East Vine Street, Room 222, Kissimmee, Florida is a hotel room at the Apollo Inn. The building is a pinkish and green building located on the south side of Vine Street. Room 222 is on the second floor of the hotel and is clearly marked with the numbers "222."

## **Attachment B**

1. Counterfeit United States currency
2. Genuine United States currency
3. Items containing or storing genuine and/or counterfeit United States currency